# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## BOWLING GREEN DIVISION

### CIVIL ACTION NO.  1:19-cv-146-GNS

STEPHEN MAYES                                                                          PLAINTIFF

VS.                              **COMPLAINT**

SIG SAUER, INC.
SERVE: SIG SAUER, INC.
        72 PEASE BLVD.
        NEWINGTON, NH  03801                                                      DEFENDANT

*****************

Comes Plaintiff, by counsel, and for his cause of action herein states and alleges as follows:

1.      This action arises out of an incident that occurred on October 30, 2018 in Franklin, Simpson County, Kentucky involving SIG Sauer P320 X Carry 9MM pistol.

2.      There is now and was at all times mentioned herein, complete diversity of citizenship between the Plaintiff and Defendant.  The matter in controversy exceeds the sum of Seventy- Five Thousand Dollars ($75,000.00), exclusive of costs, interest and disbursements; therefore, this Court has jurisdiction by virtue of the provisions of 28 U.S.C. §1332

3.      At all times relevant herein, Plaintiff was a citizen and resident of Simpson County, Kentucky.

1

4.      At all times relevant herein the Defendant, SIG Sauer, Inc., was a foreign corporation organized in the State of New Hampshire but with a certificate of authority to conduct business within the Commonwealth of Kentucky.

5.      Defendant is engaged in the business of designing, manufacturing, inspecting, testing and marketing SIG Sauer P320 X Carry 9MM pistols and other firearms. Defendant markets itself as the pre-eminent firearms manufacturer in the United States of America, and promotes itself as the contractor of choice for cutting-edge weaponry to the United States military.

6.      Defendant, directly or by its agents, servants or employees, transacts business in this Commonwealth, contracts to supply goods in this Commonwealth, caused tortious injury by an act or omission in this Commonwealth, caused tortious injury in this Commonwealth by an act or omission outside this Commonwealth while regularly doing or soliciting business, or engaging in any other persistent course of conduct, or deriving substantial revenue from goods used or consumed or services rendered in this Commonwealth.  The tortious injury occurring in this Commonwealth arose out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within this Commonwealth, or, caused injury in this Commonwealth by breach of express or implied warranty made in the sale of goods outside this Commonwealth when the seller knew such person would use, consume or be affected by the goods in this Commonwealth while also regularly doing or soliciting business or engaging in any other persistent course of conduct or deriving substantial revenue from goods used or consumed or services rendered in this Commonwealth, and otherwise have minimal contacts with the Commonwealth of Kentucky and are thus subject to jurisdiction of this Court pursuant to Kentucky's Long Arm Statute, Ky. Rev. Stat. §454.210.

7.     The facts surrounding this occurrence are as follows:

Plaintiff Mayes is a sports shooting and personal-defense enthusiast and a former law enforcement officer who has extensive training in weapons and weaponry. On August 1, 2018, Plaintiff Mayes purchased a SIG Sauer P320 X Carry 9MM pistol, Serial No. 58C33329.  This is a factory stock pistol, and the magazines are factory stock SIG Sauer brand shipped with the factory stock pistol with no alterations.  Once the paperwork and payment were completed Plaintiff entered the gun shop's indoor range to shoot the pistol.   The pistol immediately began to malfunction with the slide not ejecting the spent casing.  This occurred 80-85% of the time.  The range officer observed the difficulty the Plaintiff was having with the pistol and asked to shoot the pistol.  The range officer had the same problem.  Plaintiff notified the staff at the store where he purchased the pistol and was told that he should contact Defendant directly.

Mayes contacted Defendant's customer service department, and rather than addressing the issue Plaintiff was advised to try different ammunition. Plaintiff followed this advice but continued to have the same problems.  Upon contacting Defendant again, Plaintiff was advised that the pistol needed time to "break in."   Plaintiff continued shooting the pistol with the same malfunction occurring.

Mayes again contacted Defendant and sent the pistol to Defendant's repair division.  While Defendant had possession of the pistol for repairs, Plaintiff contacted Defendant and was advised by the repairman that the repairman's pistol had exhibited the same malfunction.  The pistol was returned to Plaintiff after approximately four weeks in the possession of Defendant for repairs.

8.     On October 30, 2018, Plaintiff was engaging in recreational shooting at his farm. Plaintiff was firing the subject pistol using the SIG Sauer magazines purchased with the pistol,

Remington 115 grain ball ammunition, and was using a Bravo concealment Kydex holster and magazine pouch, both of which were attached to his pants belt.

After shooting for approximately twenty minutes Plaintiff assumed his ready stance and moved his hands to his chest to begin a draw stroke. The subject pistol discharged with no prompting while fully-seated in its holster, while his hands remained off the pistol.

9. The pistol's discharge caused severe injury to the Plaintiff from a gunshot wound to his thigh.

10. At the time of the incident mentioned above, the subject pistol was being used for its intended or foreseeable purposes.

11. Defendant designed, tested, manufactured, assembled and/or marketed the subject SIG Sauer pistol. Defendant's explicit marketing statements that promote the safety features of the pistol include "We've designed safety elements into every necessary feature of this pistol. From the trigger, to the striker and even the magazine, the P320 won't fire unless you want it to." Defendant's marketing further states that the gun's striker safety "[p]revents the striker from being released unless the trigger is pulled."

12. Upon information and belief there have been numerous previous incidents involving the discharge of SIG Sauer pistols without trigger pull.

13. For example, from 2005 to January 2011, the San Francisco Police Department reported 29 unintended discharges (a time when it issued SIG Sauers as its primary sidearm).

14. In 2002, a San Fernando police officer dropped his SIG Sauer pistol, causing a discharge that killed him.

15. In 2008, a SIG Sauer pistol discharged on a police officer in Connecticut while holstering it, without trigger pull.

16.     In 2011, a security guard in St. Louis dropped his SIG Sauer pistol, which caused a discharge without trigger pull and shot a bystander.

17.     In 2012, a SIG Sauer pistol discharged on a police officer in New York without trigger pull while holstering it.

18.     In 2014, a SIG Sauer pistol discharged without trigger pull on a federal air marshal in New Jersey handling his SIG Sauer service weapon, which wounded him.

19.     In 2015, a Pennsylvania state trooper and firearms instructor killed another trooper with his SIG Sauer pistol when the gun discharged without trigger pull.

20.      In 2016, a tactical response training instructor near Sacramento dropped his SIG Sauer pistol, and the gun discharged without trigger pull into a student's truck.

21.     In February 2016, a fully-holstered P320 discharged without trigger pull inside a Roscommon, Michigan police vehicle when the officer moved to exit the vehicle during a snowstorm.

22.     In 2016, the Surprise, Arizona police department reported to the Defendant two instances of the P320 discharging without trigger pull.

23.     In 2017, a SIG Sauer service weapon carried by a sheriff's deputy in Michigan discharged without trigger pull, striking a schoolteacher in the neck.

24.     On January 5, 2017, a P320 shot a Stamford SWAT team member in his left knee when the pistol fell from a distance of less than three feet to the ground while fully holstered.

25.     On February 28, 2017, a P320 discharged without trigger pull while in use by the University of Cincinnati Police Department.

26.     On June 14, 2017, a P320 discharged without trigger pull in Wilsonville, Oregon.

27.     On June 20, 2017, a P320 discharged without trigger pull while in use by the Howell Township, NJ Police Department.

28.     On July 28, 2017, a P320 discharged without trigger pull in Tarrant County, Texas.

29.     On August 4, 2017, a Stamford SWAT team member sued SIG Sauer in U.S. District Court in Connecticut for a discharge without trigger pull of a P320, which shot him in his knee.

30.     Just four days later, on August 8, 2017, SIG's Sauer's CEO released a statement stating: "there have been zero reported drop-related P320 incidents in the U.S. Commercial market." This statement is patently false in view of SIG's knowledge that Officer Sheperis in Connecticut had been shot by a drop-fire some eight months earlier by the P320, and that several other discharges of the P320 had occurred before without trigger pull.

31.     On August 8, 2017, SIG announced a "voluntary upgrade" program for the P320 pistol, stating that the pistol meets "rigorous testing protocols for global military and law enforcement agencies."

32.     The upgrade program, which was presented to the public as purely optional, not urgent, and not mandatory, offered to make existing commercial versions of the P320 "better" by installing a much lighter trigger package, an internal disconnect switch, and an improved sear.

33.     Nonetheless, the incidence of P320 discharges without trigger pull continued. In October 2017, a P320 discharged without trigger pull in Georgia when an officer fell to the ground in pursuit of a suspect. His weapon was holstered, and fired without trigger pull when he struck the ground.

34.     On November 12, 2017, a P320 discharged in Tyler, Texas without trigger pull.

35.     In January 2018, a P320 discharged in Dallas County, Texas without trigger pull.

36.     On February 7, 2018, deputy sheriff Marcie Vadnais's P320 discharged in Loudoun County, Virginia without trigger pull, severing her right femur.

37.     In February 2019, a Pasco County School Resource Officer's P320 discharged without trigger pull when he leaned back against a cafeteria wall.  The weapon was fully seated in its holster.   This incident was captured on security video.

38.     In August 2019, a Philadelphia transit officer's P320 discharged without a trigger pull while fully seated in its holster.  This incident was also captured on security video.

39.     Upon information and belief, employees at SIG Sauer's own training academy in New Hampshire have admitted to discharges without trigger pull causing injury in both 2016 and 2017.

40.     The long history of the discharge of SIG Sauer pistols without trigger pull, outlined in part, *supra*, demonstrates a pervasive, systemic, chronic, and deadly problem with the design, assembly, and manufacture of SIG Sauer pistols and SIG Sauer trigger packages. At all times complained of herein SIG Sauer was on notice of the defects, had the ability to correct the defects, knew the magnitude of the dangers caused by the defects, knew of the product's lack of safety for its intended uses, and knew that its pistols caused harm to both law enforcement and the general public. Regardless, SIG Sauer chose to continue to market and sell its pistols as safe and unable to discharge without trigger pull.

41. To date, despite the deadly propensities of the P320 pistol, the Defendant SIG Sauer has not issued a mandatory recall of the P320 or any of its variants for repairs.

42.     That on the times and occasions complained of herein the subject pistol was in a condition substantially unchanged from the time of its design, manufacture and sale to Plaintiff.

43.     The design of the subject pistol created such a risk of injury that a reasonably prudent designer and marketer of firearms, being fully aware of the risk, would not have placed it in the stream of commerce as Defendant did, and Defendant is strictly liable for Plaintiff's injuries.

44.     The Defendant breached an express warranty, and knew or should have known that at the time of distribution or sale the P320 pistol that the pistol was in a defective condition, unreasonably dangerous to the user or consumer in violation of Ky. Rev. Stat. § 411.340. Defendant also breached implied warranties to the Plaintiff, including an implied warranty that the gun would not discharge without trigger pull.

45.     The design defects described hereinabove were substantial factors in causing injury and in failing to reasonably protect the Plaintiff.  Upon information and belief, Defendant knew of the design defects, and although Defendant addressed the defects in the military version of this weapon with significant modifications the Defendant took no similar precautions to protect law enforcement or civilian users of the P320 and its variants.

46.     The subject pistol was negligently tested and marketed to the general public with full knowledge by the Defendant of the defects and the possibility of discharge without trigger pull.

47.     Defendant failed to adequately warn users, including Plaintiff, that the pistol was poorly and defectively designed, and could cause harm to users and those near users.

48.     Defendant SIG Sauer has engaged in unfair, false, misleading, and deceptive acts and practices, all in violation of Ky. Rev. Stat. § 367.170 *et seq.* Plaintiff is entitled to an award of fees for his attorneys.

49.     As a result of the acts and/or omissions of Defendant, as mentioned above, Plaintiff was injured.

50.     As a result of his injuries, Plaintiff has incurred reasonable and necessary medical expenses in excess of $60,000, and additional medical expenses may be incurred in the future.

51.     As a result of his injuries, Plaintiff has suffered physical pain, and mental anguish, including loss of enjoyment of life; he will in the future suffer physical pain and mental anguish, including loss of enjoyment of life and an increased likelihood of future harmful medical complications, in an amount not less than $5,000,000.

52.     The conduct of the Defendant complained of herein:

(a)     involves the mass manufacture of hundreds of thousands of deadly weapons (including the SIG Sauer P320) for use by law enforcement and the civilian population. These deadly weapons have defects known to Defendant SIG Sauer, which defects result in discharges without trigger pull, and, in turn, result in the loss of life and limb. Said defects will continue to be unreasonably dangerous to the owner, to law enforcement, to bystanders, and to the general public until such time as Defendant SIG Sauer issues a mandatory recall for the P320 and fixes each and every one. Despite its knowledge of the dangerous propensities of the SIG Sauer P320, SIG Sauer chooses to do nothing to eliminate this threat to its customers and the general public; and,

(b)     involves the knowing and culpable conduct of SIG Sauer in manufacturing and distributing a defective deadly weapon under circumstances where SIG Sauer concealed and propagated a defective deadly weapon so as not to jeopardize a $600,000,000 contract with the United States military, whereby it chose to put profit over the safety and well-being both law enforcement and the general public.

53.     Because of the conduct described in paragraph 52, *supra*, SIG Sauer is guilty of fraudulent and malicious conduct, as well as willful, wanton, outrageous, and reckless conduct, as well as gross negligence, all in violation of Ky. Rev. Stat. §§ 411.184, 186 and the common law of Kentucky. Plaintiff is therefore entitled punitive and exemplary damages in an amount to be determined by the trier of fact, but not less than $10,000,000.00.

54. Because of the extraordinary and outrageous threat to law enforcement and to the general public this Court should exercise its authority in equity to mandate a recall of the SIG Sauer P320 pistol.

WHEREFORE, Plaintiff prays as follows:

1.     Judgment against Defendant herein for compensatory, exemplary, and punitive damages in such sums as may be awarded by the trier of fact but not less than the amounts described hereinabove;

2.     For the Court to exercise its authority in equity to mandate a recall of the P320 pistol;

3.     Trial by jury on all issues so triable;

4.     Reasonable attorney's fees;

5.     Court costs expended herein; and,

6.     Any and all other just and proper relief to which Plaintiff may appear entitled.

This October 16, 2019.

**s/ Mike Breen**

Mike Breen
MIKE BREEN, ATTORNEY AT LAW, P.S.C.
870 Fairview Ave., Suite 5
P O Box 3310
Bowling Green, KY  42102-3310
Telephone: (270) 782-3030
Facsimile:  (270) 782-3855
mike@mikebreen.com


**s/ Jeffrey S. Bagnell**

Jeffrey S. Bagnell
Attorney at Law (to be admitted *Pro Hac Vice*)
55 Greens Farms Road, Suite 200-60
Westport, CT  06880
Telephone:  (203) 984-8820
jbagnell@bagnell-law.com